# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ANDREW EYTH,

    Plaintiff,

v.                                                 Case No: 8:23-cv-1878-CEH-TGW

SPECTRUM CHARTER
COMMUNICATIONS, INC. and
DOES 1-15,

    Defendants.

## ORDER

This matter comes before the Court on Defendant Charter Communications, LLC's[1] Motion to Dismiss (Doc. 16), which Plaintiff Andrew Eyth opposes (Doc. 18). Defendant argues that Plaintiff's claims are time-barred and are governed by a binding arbitration agreement.

Upon review and consideration, and being fully advised in the premises, the Court will grant-in-part and deny-in-part the motion. To the extent the motion seeks dismissal, it is denied. However, the Court will stay the action and compel the parties to arbitrate the claims.

---

[1] Plaintiff alleges that Defendant referred to itself by various names during his employment, including "Spectrum" and "Spectrum Charter." Doc. 9 ¶ 15. Defendant indicates that its correct name is Charter Communications, LLC. Doc. 16 at 1. The Court understands all variations of "Spectrum" and "Charter" in the pleadings, motion papers, and exhibits to refer to Defendant.

# DISCUSSION

In this employment action, Plaintiff alleges that Defendant, his former employer, violated state and federal law by discriminating and retaliating against him because of his medical conditions during the COVID-19 pandemic. Doc. 9. Defendant now moves to dismiss, arguing that the suit is untimely because Plaintiff filed the Amended Complaint more than 90 days after receiving a right to sue letter from the Equal Employment Opportunity Commission ("EEOC"). In the alternative, Defendant contends that the Court must dismiss the action because an enforceable arbitration agreement governs Plaintiff's claims. Doc. 16. Each basis for dismissal will be addressed in turn.

## A. Timeliness

Defendant first argues that the action must be dismissed on statute of limitations grounds. Doc. 16 at 6-8. Although Plaintiff's initial Complaint was timely filed, the Court dismissed it and did not toll the limitations period. *Id.* Defendant contends that the action must be dismissed because the Amended Complaint was filed outside of the 90-day period. *Id.* Responding in opposition, plaintiff differentiates between the dismissal of a complaint and the dismissal of an action. Plaintiff argues that the Court's dismissal of the complaint, with leave to amend, did not impact the timeliness of the action. Doc. 18 at 5-11.

### 1. Factual Background

Plaintiff became employed with Defendant in or about 2016, when Defendant bought and absorbed Plaintiff's former company. Doc. 9 ¶ 39. He alleges that he was

constructively terminated in September 2020 because of his disability and requests for accommodations. *Id.* ¶ 352. Plaintiff filed claims of disability discrimination and retaliation with the EEOC in December 2020, and then amended his claims in 2022. Doc. 9 ¶¶ 24, 28. On May 26, 2023, the EEOC issued a right to sue notice informing him that he must file any lawsuit based on the claims within 90 days. *Id.* ¶ 29.

On August 23, 2023, Plaintiff filed the Complaint in the instant case. Doc. 1. The Court issued an Order on August 31, 2023, that "dismiss[ed] the complaint" as a shotgun pleading that did not conform with the pleading rules of the Federal Rules of Civil Procedure. Doc. 6. The Court "grant[ed] Plaintiff leave to file an amended complaint" that corrected the identified errors within 14 days. *Id.* at 4. It cautioned that the "[f]ailure to file an amended complaint within the time provided will result in the dismissal of this action, without prejudice, without further notice." *Id.* Plaintiff filed an Amended Complaint on September 14, 2023. Doc. 9.

**2. Plaintiff's Claims Are Not Time-Barred.**

Under the Americans with Disabilities Act ("ADA"), a plaintiff must bring a civil action within 90 days of receiving a right to sue letter from the EEOC. *See Zillyette v. Capital One Financial Corp.*, 179 F.3d 1337, 1339 (11th Cir. 1999), citing 42 U.S.C. § 2000e-5(f)(1) (under Title VII procedural rules, "within ninety days after [the right to sue letter] a civil action may be brought"); *see* 42 U.S.C. § 12117(a) (ADA incorporates procedures from Title VII).

3

Here, it is undisputed that Plaintiff brought this action within the 90-day statute of limitations period. *See* Doc. 16 at 8; 42 U.S.C. § 2000e-5(f)(1). The Court's subsequent dismissal of the *complaint*, without dismissing the *action*, did not render the filing of the Amended Complaint untimely.

There is a "general rule that the filing of a lawsuit which later is dismissed without prejudice does not automatically toll the statute of limitations." *Justice v. U.S.*, 6 F.3d 1474, 1478-79 (11th Cir. 1993), citing *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982) ("The fact that dismissal of an earlier suit was without prejudice does not authorize a subsequent suit brought outside of the otherwise binding period of limitations."). As the Eleventh Circuit explained in *Dade County v. Rohr Industries, Inc.*, 826 F.2d 983, 989 (11th Cir. 1987), "[a]lthough the filing of a federal action will initially toll the running of the statute of limitations, the subsequent voluntary dismissal of the federal action has the effect of placing the parties in a position as if the suit had never been filed."[2] But, contrary to Defendant's argument, this rule has not been expanded to apply to actions that were not dismissed.

Vocabulary choices have muddied the issue, as Eleventh Circuit decisions have frequently referred to a dismissal of the "complaint" to indicate that the entire action was dismissed. In *Dade County*, for example, the court held that the district court erred in ruling that "the refiled complaint related back to the date of the filing of the first

---

[2] The same rule exists in Florida state caselaw. *McBride v. Pratt & Whitney*, 909 So.2d 386, 388 (Fla. 1st DCA 2005) (collecting cases in support of the "well-established line of authority in civil cases that, when an action is dismissed…the statute [of limitations] will run as if the dismissed action had never been filed.").

4

complaint." 826 F.2d at 989. Taken out of context, the quotation would appear to support Defendant's position that the dismissal of a complaint alone can render an amended complaint time-barred. However, the facts of *Dade County* make clear that it was the plaintiff's original *lawsuit* that was dismissed, not merely the complaint. *See id.* at 986 (explaining that the district court dismissed Dade County's *suit* without prejudice.") (emphasis added). Similarly, Defendant relies on *Miller v. Georgia*, 223 F. App'x 842, 845 (11th Cir. 2007), for its holding that "the filing of a complaint that was later dismissed without prejudice does not automatically toll the limitations period for a future complaint." Despite *Miller*'s repeated use of the word "complaint," however, a review of the underlying district court decision reveals that it was the plaintiff's previous *case* that was dismissed for lack of service, not just the complaint. *See Miller v. State of Georgia*, No. 6:06-cv-32-GAP-KRS, Dkt. 11 at 1 (June 26, 2006); *see also Abram-Adams v. Citigroup, Inc.*, 491 F. App'x 972, (11th Cir. 2012) (explaining that the district court dismissed the complaint with leave to amend, then subsequently dismissed the "complaint" when plaintiff failed to amend; the latter "placed the parties in a position as if the suit had never been filed."). As Plaintiff correctly points out, all the cases Defendant cites in its motion involved the dismissal of an entire action. *See* Doc. 18 at 6, 9-11.

Another court in this District has highlighted the distinction between the dismissal of an action and the dismissal of a complaint only. *Homoday v. Smith and Nephew, Inc.*, 994 F.Supp.2d 1264 (M.D. Fla. 2014) (Whittemore, J.). In *Homoday*, the

5

court dismissed the complaint after motion practice and administratively closed the case, but invited the plaintiff to move to reopen and for leave to file an amended complaint. *Id.* at 1266. Plaintiff did so and the motion was granted. *Id.* Ruling that the amended complaint was not time-barred, the court emphasized that the case was never terminated, only administratively closed, and that the amended complaint did not commence a new suit. *Id.* at 1267. As a result, it found that the general rule cited by the Eleventh Circuit in *Justice* and *Stein* did not apply. *Id.*

The *Homoday* court drew further support from the relation back doctrine. *Id.* at 1267. Under Federal Rule of Civil Procedure 15(c), an amended pleading relates back to the date of the original pleading when, *inter alia*, it asserts a claim that arose out of the conduct, transaction, or occurrence set out in the original pleading. Fed. R. Civ. P. 15(c)(1)(B); *see also* Fed. R. Civ. P. 15(c)(1)(C) advisory committee's note to 1966 amendment ("Relation back is intimately connected with the policy of the statute of limitations… [C]haracterization of the amendment as a new proceeding is not responsive to the real[i]ty[.]"). Of course, as the *Homoday* court noted, "the relation back doctrine does not apply to the filing of a new complaint when the original action was dismissed." 994 F.Supp.2d at 1267.

The facts of the instant case are even more straightforward than in *Homoday*. This Court's August 31, 2023 Order made the explicit distinction between a dismissal of the complaint and a dismissal of the action: it dismissed the *complaint*, with leave to amend, and warned Plaintiff that the failure to timely file an amended complaint would result in dismissal of the *action*. Doc. 6 at 4. The *action* remained open despite

6

the dismissal of the complaint. Accordingly, the general rule on which Defendant relies does not apply. Further, Plaintiff's timely amended complaint asserted identical claims to the ones he raised in the original complaint. The amended complaint therefore relates back to the original complaint under Rule 15(c). Because Plaintiff timely filed this action within 90 days of the right to sue letter, and the action has never been terminated, Defendant's motion to dismiss on statute of limitations grounds is due to be denied.

### B. Arbitration

In the alternative, Defendant argues that the action must be dismissed because Plaintiff's claims must be arbitrated. Doc. 16 at 9-15.

#### 1. Defendant's Arguments and Evidence

Defendant asserts that Plaintiff entered into a written agreement that required individual arbitration of all employment-related disputes, including the claims Plaintiff raises in the instant case. *Id.* According to an affidavit by John Fries, Defendant's corporate representative ("the Fries Affidavit"), Defendant's Vice President of Human Resources sent an email to all active employees on October 6, 2017, announcing the "Solution Channel" arbitration program ("the October 6 Email"). The email notified employees that they would be enrolled in the arbitration program, and thereby waive their right to participate in court litigation for employment-related legal disputes, if they did not opt out within the next 30 days.

The October 6 Email is attached to the Fries Affidavit. Doc. 16-1 at 45-46. The "To" field indicates it was sent to "Eyth, Andrew J[Andrew.Eyth@charter.com]."

7

The subject line reads, "Charter's Code of Conduct and Employee Handbook." *Id.* at 45. The first half of the email announces the company's Code of Conduct and updates to its Employee Handbook, both of which were hyperlinked. *Id.* at 45. The second half of the email states:

> Even with clearly articulated standards, guidelines and policies, we understand that workplace conflicts arise from time to time. The vast majority of these will be appropriately resolved through informal channels (such as speaking directly to your supervisor, manager or local human resources representative), though we also recognize that some employment-based disputes may be better addressed through a more structured and formal resolution process, similar to the process that was already the standard at Time Warner Cable and for our senior executives, which has covered over 40,000 Charter employees. In the unlikely event of a dispute not resolved through the normal channels, Charter has launched *Solution Channel*, a program that allows you and the company to efficiently resolve covered employment-related legal disputes through binding arbitration.
>
> By participating in Solution Channel, you and Charter both waive the right to initiate or participate in court litigation (including class, collective and representative actions) involving a covered claim and/or the right to a jury trial involving any such claim. More detailed information about Solution Channel is located on Panorama. Unless you opt out of participating in Solution Channel within the next 30 days, you will be enrolled. Instructions for opting out of Solution Channel are also located on Panorama.

*Id.* at 45-46.

The email's first reference to Solution Channel was a hyperlink to the Solution Channel web page on the company's employee website, Panorama. *Id.* at ¶ 9. Toward the bottom of the Solution Channel webpage, hyperlinks called "Mutual Arbitration Agreement" and "Program Guidelines" sent readers to the full terms of the arbitration

agreement. *Id.* ¶ 10.  The Fries Affidavit states that the Solution Channel web page also included the following language during the 30-day opt-out period:

> **Opting Out of Solution Channel**
> If you do not opt out of Solution Channel within the designated time, you will be automatically enrolled in Solution Channel and considered to have consented to the terms of the Mutual Arbitration Agreement at that time. To opt-out of Solution Channel, please **click here**. In the new window that will open, click Main Menu- >Self-Service->Solution Channel.

*Id.* ¶ 11.  The "click here" hyperlink sent readers to PeopleSoft, the company's electronic human resources system. *Id.* ¶ 12.  During the 30-day opt-out period, the "Solution Channel" page in PeopleSoft offered an opt-out selection with the following text:

> After having carefully considered its components, I am opting out of Solution Channel.  By opting out, I understand and agree that I am not required to participate in Solution Channel.  I also understand that if I am already subject to another arbitration agreement, I will remain subject to that agreement.  I am only opting out of Solution Channel by completing this form.
>
> I ALSO UNDERSTAND THAT IF I DO NOT OPT OUT, I AM SPECFICALLY CONSENTING TO PARTICPATION IN SOLUTION CHANNEL.

*Id.* ¶¶ 13-14; *Id.* at 43.  The Solution Channel web page,[3] the full Arbitration Agreement and Program Guidelines, and the Opt-Out site in PeopleSoft are attached to the Fries Affidavit. *Id.* at 10- 11, 13-40, 43.

---

[3] The version of the web page that was submitted as an exhibit does not include the "opt out" language referred to in paragraph 11 of the Fries Affidavit.

9

The Fries Affidavit further asserts that Plaintiff was included in the distribution list of the October 6 Email, and that he was listed as a participant in the Solution Channel program as of November 6, 2017. *Id.* ¶¶ 19-20, 22. Plaintiff was not included on the company's list of employees who opted out of the program. *Id.* ¶¶ 18, 21. Based on this evidence, Defendant argues that Plaintiff agreed to participate in mandatory arbitration by failing to opt out within the required time period. Doc. 16 at 11-12. Accordingly, Defendant asks the Court to dismiss the action. *Id.* at 15.

### 2. Plaintiff's Arguments and Evidence

In opposition, Plaintiff argues that Defendant has not provided enough evidence to establish that the parties entered into an arbitration agreement. Doc. 18 at 12-20. He contends that the Fries Affidavit is conclusory hearsay that does not contain proof that the October 6 Email was actually sent to him. *Id.* He also asserts that Defendant has not provided the "opt out page" of the Solution Channel webpage, an omission that another court held rendered the Affidavit inadmissible hearsay. *Id.* at 13-15.

Plaintiff submits his own affidavit ("the Eyth Affidavit") in which he expressly denies having seen an arbitration agreement or discussed arbitration with anyone at the company, including during his efforts to resolve his dispute with the company. Doc. 18-1 ¶¶ 3, 4, 21, 25, 26. With respect to the October 6 Email, he states, "Nor do I believe that I ever received an email from [the Vice President of Human Resources] of any kind, specifically including [the October 6 Email]." *Id.* ¶ 8. He is certain that

10

his supervisors did not speak to him about the email or tell him to open it or take any action on it, as they did whenever he received emails that required action. *Id.* ¶¶ 19-20. In any event, Plaintiff "never saw or read or reviewed anything at all about arbitration of any kind of nature whatsoever in or from any email ever sent to me" by the company; he makes similar denials about the arbitration agreement, the arbitration program, and the opt-out deadline. *Id.* ¶¶ 29-32, 34. He further explains that when his old company was bought out by Defendant, multiple supervisors assured him that his job duties and terms of employment would not change. *Id.* ¶¶ 14-18. Plaintiff no longer has access to his company email account or employee websites. *Id.* ¶¶ 12, 28, 33.

Plaintiff argues that the parties' disagreement about whether Defendant properly notified him about Solution Channel constitutes a genuine dispute of material fact that necessitates a trial. Doc. 18 at 12-17. In the alternative, he contends that the motion should be denied because Defendant has failed to offer competent evidence demonstrating the existence of a genuine issue of material fact that an arbitration agreement was made. *Id.* at 17-20.

### 3. The Creation of Arbitration Agreements under Florida Law

Arbitration agreements are governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. The FAA provides that written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a strong federal policy toward resolving disputed arbitrable issues through arbitration; indeed, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration,

11

whether the problem at hand is the construction of the language itself or an allegation of waiver, delay, or a likely defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983); *see also Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-cv-2341-WFJ-JSS, 2019 WL 5887179, at *1 (M.D. Fla. Nov. 12, 2019) (stating that "[a] strong policy exists in favor of resolving disputes by arbitration").

Nonetheless, parties cannot be forced to submit to arbitration if they have not agreed to do so. *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2018). Therefore, the presumption in favor of arbitration does not apply to disputes concerning whether an agreement to arbitrate was made. *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1116 (11th Cir. 2014). When determining whether the parties agreed to arbitrate, the court employs a "summary judgment-like standard." *Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). The court "may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if there is no genuine dispute as to any material fact concerning the formation of such an agreement." *Id.* (quotation omitted). Evidence that is "merely colorable" or "not significantly probative" does not create a genuine dispute of fact, and "conclusory allegations without specific supporting facts have no probative value for a party resisting summary judgment." *Id.* (quotations and citations omitted). Where a genuine dispute of fact exists regarding the making of an arbitration agreement, the court must proceed to a trial on the issue. 9 U.S.C. § 4.

The question of whether an enforceable arbitration agreement exists is decided under state contract law. *First Options of Chicago, Inc. v. Kaplan*, 415 U.S. 938, 945 (1995); *Bazemore v. Jefferson Capital Systems, LLC*, 827 F.3d 1325, 1330 (11th Cir. 2016). Here, the parties agree that Florida law applies. *See* Doc. 16 at 11 (citing Florida state cases); Doc. 18 at 16. In Florida, the party seeking to enforce a contract must prove the following elements by a preponderance of the evidence: "offer, acceptance, consideration[,] and sufficient specification of essential terms." *St. Joe Corp. v. McIver*, 875 So.2d 375, 381 (Fla. 2004); *see also All South Subcontractors, Inc. v. Amerigas Propane, Inc.*, 206 So.3d 77, 81 (Fla. 1st DCA 2016) (collecting cases in support of principle that proponent of arbitration has burden of establishing existence of enforceable contract).

Florida law does not require a signature to create a binding contract, including an arbitration agreement. *See Hicks v. Comcast Cable Comms., LLC*, No. 18-cv-61384, 2019 WL 5208849, *6 (S.D. Fla. March 27, 2019), citing *Consol. Res. Healthcare Fund I, Ltd. v. Fenelus*, 853 So.2d 500, 503 (Fla. 4th DCA 2003) and *Sosa v. Shearform Mf.*, 784 So.2d 609, 610 (Fla. 5th DCA 2001); *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1369 (11th Cir. 2005) ("[T]he overwhelming weight of authority supports the view that no signature is required to meet the FAA's [] requirement" that an arbitration provision be in writing). It is well-settled that "[a] valid contract—premised on the parties' requisite willingness to contract—may be 'manifested through written or spoken words, or inferred in whole or in part from the parties' conduct.'" *Kolodziej v. Mason*, 774 F.3d 736, 741 (11th Cir. 2014), quoting *L&H Constr. Co. v. Circle*

13

*Redmont, Inc.*, 55 So.3d 630, 634 (Fla. 5th DCA 2011). Accordingly, when an arbitration agreement is not signed, the court "look[s] to a party's words and conduct to determine whether the party assented to the agreement." *Santos v. General Dynamics Aviation Svcs. Corp.*, 984 So.2d 658, 661 (Fla. 4th DCA 2008) (citation omitted).

Moreover, the offeror is permitted to specify the terms and manner of the contract's acceptance, which is not limited to an affirmative response. *Dorward v. Macy's Inc.*, No. 2:10-cv-669-JES-D_F, 2011 WL 2893118, *9 (M.D. Fla. July 20, 2011), citing *Kendel v. Pontious*, 261 So.2d 167, 170 (Fla. 1972). For example, Florida courts have upheld arbitration agreements whose terms indicated that they would be accepted by the recipient's continued employment with the offeror. *See*, *e.g.*, *BDO Seidman, LLP v. Bee*, 970 So.2d 869, 875 (Fla. 4th DCA 2007) (employee's continued employment evinced his acquiescence to the terms of agreement that included arbitration provision); *Santos*, 984 So.2d at 661 (same, where agreement stated the continuation of employment would be deemed acceptance of arbitration policy); *see also McDougal v. Comcast Corp.*, No. 16-81906-CIV, 2017 WL 3726040, *3 (S.D. Fla. Feb. 24, 2017) (finding plaintiffs accepted the arbitration agreement by their continued use of defendant's services after receiving notice of arbitration provision); *Sundial Partners, Inc. v. Atlantic St. Capital Mgmt. LLC*, No. 8:15-cv-861-SDM-JSS, 2016 WL 943981, *5 (M.D. Fla. Jan. 8, 2016) (plaintiff's continued performance after receipt of agreement manifested assent to arbitration provision), *report and recommendation adopted by* 2016 WL 861 (March 11, 2016).

Similarly, "a party may manifest assent to an agreement by failing to opt out of the agreement within a specified time." *Dorward*, 2011 WL 2893118 at *10. Where a party has failed to opt out of an arbitration agreement, the question of whether they received adequate notice of the agreement and the opt-out period often becomes the dispositive issue in determining the agreement's enforceability. *See*, *e.g.*, *Wright v. Greensky*, No. 20-cv-62441, 2021 WL 2414170 (S.D. Fla. June 14, 2021); *Kester v. BellSouth Telecommunications, Inc.*, No. 3:18-CV-1469-TJC-MCR, 2019 WL 13267100, *8 (M.D. Fla. Aug. 2, 2019). In evaluating notice, courts have applied the "mailbox rule," a rebuttable presumption that an item properly mailed was received by the addressee. *Wright*, 2021 WL 2414170 at *13, citing *Bazemore*, 827 F.3d at 1331 n.2. In recent years, courts have extended the mailbox rule to notice that was sent via email. *See*, *e.g.*, *Corbin v. Affiliated Computer Servs., Inc.*, No. 6:13-CV-180-CEH-TBS, 2013 WL 3804862, *6 (M.D. Fla. July 19, 2013); *Abdullah v. Am. Exp. Co.*, No. 3:12-CV-1037-MMH-MCR, 2012 WL 6867675, *4–5 (M.D. Fla. Dec. 19, 2012), *report and recommendation adopted by* 2013 WL 173225 (Jan. 16, 2013).

### 4. An Arbitration Agreement Exists Between Plaintiff and Defendant

Here, there is no signed arbitration agreement between the parties, but Defendant argues that they entered into an agreement when Defendant sent Plaintiff an email notifying him of the ability to opt out, and he failed to do so. The Court agrees that these actions created an arbitration agreement under Florida law.

Plaintiff's primary argument in opposing arbitration is that Defendant did not submit proof that the October 6 Email announcing the company's arbitration program and opt-out period was sent to him.[4] But Exhibit E to the Fries Affidavit is exactly that: a copy of the email sent to what is purportedly Plaintiff's company email address. Doc. 16-1 at 45-46; *cf. Bazemore*, 827 F.3d at 1333 (no genuine issue of fact where defendant stated only that the agreement "would have been sent" to plaintiff but offered no competent evidence that it was sent to her). Significantly, Plaintiff does not deny that he received emails at that address or otherwise challenge the authenticity of the exhibit; rather, he denies its existence. His assertion that Defendant did not submit the Solution Channel webpage contents and the opt-out page is similarly incorrect, as these materials were also attached to the Fries Affidavit. Doc. 16-1 at 10-43. Plaintiff's argument that the Fries Affidavit contains conclusory hearsay is therefore unavailing.

Moreover, Plaintiff's bare denial that he received the email does not create a genuine issue of material fact on the question of receipt. Plaintiff's denial is equivocal, *see* Doc. 18-1 ¶¶ 8, 20 (stating he does not "believe" he received it, and he "doubt[s]" it was sent to him), and it is unsupported by other facts or evidence, such as a denial that he was able to receive emails at that address. *Cf. Hankerson v. Five Star Quality Care-*

---

[4] *See* Doc. 18 at 14 ("Why would Defendant…not have a copy of the email [Marchand] supposedly sent to Plaintiff so that it could file proof with the court?"), 19 ("[T]here is no evidence presented that the emailing to plaintiff actually occurred where defendant is in possession of the evidence that it did and failed to submit that evidence in support of its motion."); Doc. 18-1 ¶ 10 ("I have reviewed the affidavit of John Fries looking for any document which confirms that I was, in fact, sent this email at an email address used by me, and have found no such document.").

*FL, LLC*, No. 16-62596-CV, 2017 WL 2930581, *2 (S.D. Fla. July 7, 2017) (defendant failed to carry its burden of proof of showing plaintiff's receipt of email notice where evidence showed plaintiff did not use a company-issued email address until the following year).  In contrast, Defendant's evidence that the email was sent to him creates a rebuttable presumption that he received it. *See Corbin*, 2013 WL 3804862 at *6; *Abdullah*, 2012 WL 6867675 at *4-5.  This Court is persuaded by other courts' findings that a plaintiff's unsupported affidavit stating he did not receive an email, in the face of affirmative evidence that it was sent to him, is insufficient to rebut the presumption of receipt or to create a genuine issue of fact. *See id.* (finding a valid arbitration agreement existed based on evidence defendant sent plaintiff notice via email, despite plaintiff's unsupported denial of receipt); *see also Kester*, 2019 WL 13267100 at *9-10 (same).  Therefore, there is no genuine issue of material fact that Plaintiff received the October 6 Email.

To the extent Plaintiff failed to read the email, his "decision not to open and read an email does not render the arbitration agreement invalid and unenforceable." *Grant v. Morgan Stanley Smith Barney LLC*, No. 16-81924-CIV, 2017 WL 1044484, *3 (S.D. Fla. March 20, 2017).  The email clearly communicated to employees that they had 30 days to opt out of the arbitration program or else they would waive their ability to participate in court litigation of employment-related disputes. Doc. 16-1 at 46; *see Corbin*, 2013 WL 3804862 at *5 (the email "constituted an offer to contract, the terms of which [were] clearly set out in the body of the email.").  The opt-out policy and instructions for opting out were linked directly from the email, as were the full terms

17

of the arbitration program. *See Grant*, 2017 WL 1044484 at *4. Although the email's subject line, "Charter's Code of Conduct and Employee Handbook," did not specifically refer to arbitration, *cf. id.*, it put recipients on notice that the email contained information about employment policies. *See*, *e.g.*, *Fridman v. 1-800 Contacts, Inc.*, 554 F.Supp.3d 1252, 1260 (S.D. Fla. 2021) (in the related context of an arbitration agreement contained in a website's linked terms and conditions, the agreement is enforceable if "the hyperlink to the terms and conditions is conspicuous enough to put a reasonably prudent person on inquiry notice.") (citations and quotations omitted).

Plaintiff highlights his supervisors' representations that his terms of employment would not change after Charter bought his former company. Doc. 18 at 13. But Charter implemented the arbitration policy a year after Plaintiff became a Charter employee. *See* Doc. 9 ¶ 39 (Plaintiff became a Charter employee "in or about 2016"). Assurances that his supervisors made about the transition between companies are irrelevant to communications about new company policies a year later. Plaintiff further avers that his supervisors always advised him how to handle work assignments, including "telling us directly if we needed to do something in response to an email." Doc. 18-1 ¶ 19. But opting out of the company's new arbitration policy was a choice employees could make, not a work assignment or a job requirement. Plaintiff's supervisors' statements do not create a genuine issue of material fact with respect to the arbitration agreement.

Defendant has adequately shown that a valid contract to arbitrate was formed between the parties under Florida law. Because there is no genuine issue of material

18

fact as to whether an agreement was reached, Plaintiff's request for a trial is due to be denied. *See Bazemore*, 827 F.3d at 1334.

### 4. The Action Must Be Stayed Pending Arbitration

Once the Court determines that an arbitration agreement was made, the party seeking to evade arbitration bears the burden of showing that the arbitration provision is invalid or otherwise unenforceable. *See Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91-92 (2000). As Plaintiff does not offer any arguments or evidence on this point, he has not met his burden of showing that the provision should not be enforced. Moreover, the Court agrees with Defendant that the agreement covers Plaintiff's claims of disability discrimination in his employment. *See* Doc. 16-1 at 13 (agreement's broad definition of "covered claims" includes, *inter alia*, claims of unlawful discrimination based on disability). Thus, the parties must arbitrate this dispute.

However, a stay of the action, rather than dismissal, is the appropriate remedy. *See* 9 U.S.C. § 3; *Bender v. A.G. Edwards & Sons*, 971 F.2d 698, 699 (11th Cir. 1992) ("Upon finding that a claim is subject to an arbitration agreement, the court should order that the action be stayed pending arbitration."); *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1368 (11th Cir. 2005) ("FAA's enforcement sections require a court to stay a proceeding where the issue in the proceeding is referable to arbitration") (internal quotations omitted). Therefore, Defendant's motion is due to be denied to the extent it seeks dismissal of Plaintiff's claims. Instead, the Court will stay the matter and compel arbitration.

19

Accordingly, it is **ORDERED**:

1. Defendant Charter Communications, LLC's Motion to Dismiss (Doc. 16) is **GRANTED-IN-PART and DENIED-IN-PART**. The motion is granted to the extent that Plaintiff Andrew Eyth is compelled to arbitrate his claims against Defendant Charter Communications, LLC. The motion is otherwise denied.

2. This case is **STAYED** pending the arbitration of Plaintiff Andrew Eyth's claims against Defendant Charter Communications, LLC.

3. The parties shall file a notice informing the Court that the arbitration has been concluded, or that their dispute has otherwise been resolved, within ten days of either of such event.

4. The Clerk is directed to terminate all pending motions and deadlines and administratively close this file.

**DONE** and **ORDERED** in Tampa, Florida on April 26, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties